UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMELIA ELVA SPERO,<br><br>                    Petitioner,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security Administration,<br><br>                    Respondent. | Case No. 1:18-CV-00212-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Amelia Elva Spero's Petition for Review of the final decision of the Commissioner of Social Security denying her application for supplemental security income, filed on May 14, 2018. (Dkt. 2, 24.) The Court has reviewed the Petition, the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will remand the ALJ's decision.[1]

## PROCEDURAL AND FACTUAL HISTORY

On October 22, 2014, Petitioner protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act,

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is the named Respondent. 42 U.S.C. § 405(g).

alleging disability beginning January 10, 2014. At the time of the alleged disability onset date, Petitioner was 36 years of age. She has a high school education with prior work experience as a dietary aid and cook.

Petitioner complains of chronic neck pain, headaches, unspecified symptoms relating to hypothyroidism, and mental health conditions. Petitioner claims she is unable to work due to her physical and mental impairments of: degenerative disc disease, spinal stenosis, arthritis in the spine, hypothyroidism, depression, and anxiety. Petitioner's relevant medical history includes three cervical spine surgeries in 2012, 2013, and 2015; spinal injections and other non-surgical cervical spine treatments; and, a hemithyroidectomy in 2012.[2] Petitioner also reports receiving treatment for depression and anxiety and taking psychotropic medications.

Petitioner's application was denied initially and on reconsideration. A hearing was conducted on December 6, 2016, before Administrative Law Judge (ALJ) David Willis. After hearing testimony from Petitioner and vocational expert Sara Statz, the ALJ issued an unfavorable decision finding Petitioner not disabled on January 11, 2017. (AR 15-26.) Petitioner's request for review by the Appeals Council was denied on February 14, 2018, making the ALJ's decision final. *See* 42 U.S.C. § 405(h).

Petitioner timely filed this action *pro se* seeking judicial review of the ALJ's

---

[2] Following the ALJ's decision, Petitioner underwent a total hysterectomy in 2017 and gallbladder removal in 2018. (Dkt. 24.)

decision under 42 U.S.C. § 405(g).[3] Petitioner challenges that the ALJ erred in: 1) considering the medical opinion evidence; and 2) rejecting Petitioner's subjective symptom complaints. (Dkt. 32.)[4]

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only where their physical or mental impairments are of such severity that they cannot do their previous work and are also unable, considering their age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Court must uphold an ALJ's decision, unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a

---

[3] Petitioner was represented by counsel at the hearing and before the Appeals Council.

[4] Petitioner does not properly challenge the ALJ's determinations regarding her mental impairments. (Dkt. 32.) Accordingly, the Court addresses only Petitioner's arguments concerning the ALJ's consideration of her physical impairments. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001)

reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires more than a scintilla, but less than a preponderance, of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). Additionally, where a party proceeds *pro se*, the Court construes the allegations of the pleading liberally and affords the petitioner the benefit of any doubt. *Griffin v. Berryhill*, Case No. C17-308-RAJ, 2018 WL 3216895, at *2 (W.D. Wash. July 2, 2018) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985)).

## THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date. The ALJ found at step two that Petitioner had the following medically determinable, severe impairments: degenerative disc disease of the cervical spine, anxiety, and depression.

MEMORANDUM DECISION AND ORDER - 4

(AR 17.) The ALJ found Petitioner's alleged migraine headaches and thyroid gland conditions were non-severe. At step three, the ALJ concluded Petitioner does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

The ALJ next assessed the limitations caused by Petitioner's impairments and determined she retains the Residual Functional Capacity (RFC) to perform sedentary work with the following physical limitations: occasionally lift and carry ten pounds and frequently carry less than ten pounds; sit for six hours, stand for two hours, and walk for two hours in an eight hour work day; can push and pull as much as she can lift and carry; occasionally reach overhead; and frequently reach in all other directions bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and kneel; never crouch or crawl; never work at unprotected heights or around moving mechanical parts; cannot operate a motor vehicle as part of employment; and is limited to occasional or less concentrated exposure to vibration.[5] The ALJ found Petitioner can perform simple, routine, and repetitive tasks but not at a production rate pace; and she is limited to simple work-related decisions. The ALJ concluded Petitioner would be off task five percent of the time in an eight hour work day and would be absent from work one day each month. (AR 20.)

---

[5] The ALJ also considered the impact obesity has on limitations of function, including Petitioner's ability to perform routine movement and necessary physical activity within the work environment. (AR 20) (citing SSR 02-1p.)

**MEMORANDUM DECISION AND ORDER -** 5

At step four, the ALJ determined Petitioner was unable to perform her past relevant work as a cook and dietary aid, which are medium exertion and skill positions. Therefore, the ALJ moved to step five where he found that, based on the Petitioner's age, education, work experience, RFC, and the testimony of the vocational expert, Petitioner could perform the requirements of other work existing in significant numbers in the national economy such as document preparer, addressor, and telephone quotation clerk. (AR 26.) Accordingly, the ALJ determined Petitioner not disabled.

## ISSUES PRESENTED

Petitioner raises the following issues as grounds for reversal and remand:

1. Whether the ALJ erred in considering the medical evidence; and

2. Whether the ALJ erred by rejecting Petitioner's subjective complaints.

## DISCUSSION

## 1. The ALJ Erred in Considering the Medical Evidence

Petitioner argues the ALJ failed to properly consider the "medical records regarding her spine," specifically, the assessment of her treatment provider, Daryn J. Barnes, PA-C. (Dkt. 32.)[6] Respondent contends the ALJ properly evaluated Mr. Barnes' opinion. (Dkt. 34.) For the reasons that follow, the Court finds the ALJ failed to properly

---

[6] While Respondent addresses only Mr. Barnes' opinion, the Court liberally construes Petitioner's argument contesting the ALJ's examination of all the "medical records regarding her spine," to challenge the ALJ's consideration of the entire record and the medical opinions of Drs. Floyd and Williams. (Dkt. 32); *see Griffin*, 2018 WL 3216895, at *2 (construing the allegations of a *pro se* pleading liberally and affords the petitioner the benefit of any doubt.).

MEMORANDUM DECISION AND ORDER - 6

consider the medical opinion evidence of Petitioner's treating physician, C. Timothy Floyd; the assessment of treating medical provider, Mr. Barnes; and the evaluation of examining physician, Mark Williams.

### A.    Legal Standards for Evaluating Medical Opinions

The weight given to medical opinions by accepted medical sources, such as physicians, depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison*, 759 F.3d at 1012.

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quotation omitted). Where the opinion of a treating or examining physician is contradicted, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" for rejecting the opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also Garrison*, 759 F.3d at 1012.

An ALJ must also consider the opinions of other medical providers who are not within the definition of "acceptable medical sources." *See* 20 C.F.R. §§ 404.1513(a), 404.1527(b), (f) (2013); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (For claims filed before March 27, 2017, "only physicians and certain other qualified

specialists are considered '[a]cceptable medical sources.'").[7]

The regulations separate these other providers in two groups: (1) other medical sources; and (2) other non-medical sources. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Evidence from "other sources," including therapists, nurse-practitioners, and physician's assistants, may be used to show the severity of an impairment and how it affects the ability to work. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *see also Garrison*, 759 F.3d at 1023. However, opinions from "other sources" are not entitled to the same deference as an acceptable medical source. *Molina*, 674 F.3d at 1111 (citing § 404.1527; SSR 06-03p). "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so'" that are supported by substantial evidence. *Id.* (quoting *Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (citation omitted). An ALJ errs by rejecting "a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his or her] conclusion." *Id.* at 1012–13.

---

[7] The regulations governing the evaluation of medical evidence were amended for claims filed after March 27, 2017. Because Petitioner's claim was filed on October 22, 2014, the Court applies the caselaw and regulations effective prior to the March 27, 2017 amendments. *See* 20 C.F.R. §§ 404.1527, 404.1520c.

In evaluating opinions of both acceptable medical sources and other sources, the ALJ must also consider: 1) whether the source examined the claimant; 2) the length, frequency, nature, and extent of any treatment relationship; 3) the degree of support the opinion has, particularly from objective medical evidence; 4) the consistency of the opinion with the record as a whole; 5) the source's specialization; and 6) "other factors." 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675; *Orn*, 495 F.3d at 631-32; *Revels*, 874 F.3d at 665 (citing 20 C.F.R. § 404.1527(c)(1)–(2), (f)) (The § 1527 factors are used to evaluate the opinions of medical providers who are acceptable medical sources and those who are not.).

### B.    Dr. Floyd's Opinion

C. Timothy Floyd, was Petitioner's treating physician who performed her three cervical surgeries. The ALJ gave little weight to Dr. Floyd's September 1, 2015 assessment, stating:

> Little weight is given to the opinion of the treating physician, Dr. Floyd, in Exhibit 6F. The claimant does not appear to have a limitation of function that would require her to miss 15% or more of regular work attendance. There is insufficient evidence to support a finding that the claimant would require more frequent and longer breaks than expected. Also, the standing and walking limitations at 8 hours per day appears to be a typo on the part of Dr. Floyd. Overall the opinion in Exhibit 6F is not consistent with other medical evidence of record and is therefore given little weight.

(AR 24) (citing Exhibit 6F.) To reject a contradicted opinion of Petitioner's treating physician, the ALJ was required to provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725; *see also Garrison*, 759 F.3d at 1012. An ALJ errs by rejecting a physician's opinion in a vague or conclusory

manner. *Garrison*, 759 F.3d at 1012-13. Here, the ALJ rejected Dr. Floyd's opinion in a conclusory manner without explaining what records are inconsistent with the doctor's opinion. Moreover, the ALJ ignored significant, probative evidence concerning Dr. Floyd's opinion.

When explaining the reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion; instead, the ALJ must "set forth his [or her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. Here, the ALJ's broad and generalized statements fail to set forth what evidence in the record is inconsistent with Dr. Floyd's assessment and explain why the ALJ's interpretation of the record is correct.

Dr. Floyd completed an assessment on September 1, 2015, shortly before he performed Petitioner's third cervical spinal surgery on September 23, 2015. (AR 539.) Notably, Dr. Floyd had previously concluded Petitioner did not qualify for disability following her first two surgeries. (AR 497.) On August 13, 2015, however, Dr. Floyd reevaluated Petitioner's cervical spine and found a recurrent disk herniation and an incomplete union at the lower level which necessitated a third neck surgery to remove the hardware from the prior surgeries and to fuse Petitioner's cervical spine from C5 to C7. (AR 551.) Thus, Dr. Floyd's August 2015 and September 2015 evaluations were markedly different from his prior records concerning Petitioner's cervical spine.

The ALJ's decision, however, relies in large part on the records preceding

**MEMORANDUM DECISION AND ORDER -** 10

Petitioner's third cervical spine surgery, some of which showed Petitioner's neck had improved during that time. (AR 22.) Notably missing from the ALJ's decision, however, is any mention of Dr. Floyd's August 13, 2015 reevaluation of Petitioner's neck prior to her third surgery. (AR 551.) The ALJ's failure to address the August 13, 2015 record constitutes error.

While the ALJ need not discuss every piece of evidence presented, the ALJ cannot simply ignore probative evidence. *Lee v. Colvin*, 80 F.Supp.3d 1137, 1148 (D.Or. 2015) (citing *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) ("ALJs need not discuss all evidence presented to [them]. Rather, [they] must explain why significant probative evidence has been rejected."); *see also Diedrich v. Berryhill*, 699 Fed. App'x 726 (9th Cir. 2017) (reaffirming the proposition).

The August 13, 2015 record is probative of the bases underlying Dr. Floyd's September 1, 2015 assessment and relevant to why that assessment was different from prior records where Dr. Floyd indicated Petitioner did not meet the criteria for disability. *Compare* (AR 553) (Dr. Floyd released Petitioner to return to work in June 2014.); (AR 555) (Dr. Floyd concluded Petitioner did not have a qualifying condition for disability in September 2014.); *to* (AR 551) (Dr. Floyd states "I would be happy to fill out any paperwork for short-term disability" in September 2015). Further, Dr. Floyd's findings in the August 13, 2015 reevaluation are contrary to the ALJ's conclusion that a July 14, 2015 cervical MRI showed Petitioner's "overall cervical spine situation resulted in only mild spinal canal stenosis." (AR 22.) In contrast, Dr. Floyd's reevaluation concluded the condition of Petitioner's cervical spine in August 2015 was anything but "mild" and, in

fact, would require a third surgery to repair. (AR 551.)

The ALJ erred by failing to discuss this probative evidence and to sufficiently explain the reasons for rejecting Dr. Floyd's reevaluation and assessment of Petitioner's neck in August and September of 2015. It may be that a proper basis exists for the ALJ to have discredited Dr. Floyd's opinion. However, the Court cannot determine whether substantial evidence supports the ALJ's decision to do so, because the ALJ failed to meaningfully explain the reasons for discounting Dr. Floyd's opinion and failed to discuss all of the probative evidence in the record. *Reddick*, 157 F.3d at 725; *Lee*, 80 F.Supp.3d at 1148. Remand is therefore required to allow the ALJ to make credibility determinations and to resolve ambiguities in the record.

### C.    Mr. Barnes' Assessment

Daryn J. Barnes, PA-C, is a certified physician's assistant who has treated Petitioner since 2011. Mr. Barnes is considered an "other medical source." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (2013). The ALJ was required to consider Mr. Barnes' opinion and could discount his assessment only by giving reasons germane for doing so that are supported by substantial evidence in the record. *Molina*, 674 F.3d at 1111.

On December 5, 2016, Mr. Barnes completed a physical RFC assessment, opining that Petitioner's spinal fusion C5-C7 and migraine headaches would require her to be off task 15% or more than an average healthy worker; require longer or more frequent daily rest periods during an average eight hour work day; and result in two or more sick days each month. (AR 605.) Mr. Barnes estimated Petitioner could frequently or occasionally lift and carry only twenty pounds and could sit, stand, and walk a maximum of two hours

for each activity in a given work day and must lie down for two hours during a work day.

The ALJ assigned little weight to Mr. Barnes' December 5, 2016 assessment based on "many of the same reasons set forth" for rejecting the opinion of Dr. Floyd. (AR 24.) The ALJ found Mr. Barnes' assessment was "very similar" to Dr. Floyd's opinion, with the exception of the number of hours Mr. Barnes opined Petitioner could sit, stand, walk, and would need to lie down in an eight hour workday. (AR 24.) The ALJ noted Mr. Barnes is not a recognized medical source and concluded that Mr. Barnes' assessment was "inconsistent with the overall medical evidence of record as well as the findings and conclusions in this decision." (AR 24.)

The Court finds the ALJ erred in evaluating Mr. Barnes' opinion by failing to set forth germane reasons for discounting his opinion that are supported by substantial evidence. As discussed above, the ALJ erred in evaluating Dr. Floyd's opinion and, therefore, improperly relied on that as a basis for discrediting Mr. Barnes' assessment. Further, the ALJ did not identify which records are inconsistent with Mr. Barnes' opinion or provide any explanation of how Mr. Barnes' opinion was inconsistent with the overall medical evidence in the record. *Reddick*, 157 F.3d at 725 (The ALJ is responsible for resolving discrepancies in the record, but must explain why his own interpretations are correct.). The ALJ provided only generalized and conclusory statements that are insufficient to explain the basis for his decision.

Moreover, the functional assessments of Dr. Floyd and Mr. Barnes, which the ALJ concludes are "very similar," are notably distinct with regard to when each was rendered. Dr. Floyd formed his opinion a few weeks *prior* to Petitioner's third surgery. (AR 539.)

**MEMORANDUM DECISION AND ORDER - 13**

Mr. Barnes' assessment was made over one year *after* her third surgery. (AR 605.) The ALJ does not acknowledge this important distinction. In fact, the ALJ generally failed to accurately or adequately address the medical records dated shortly before and following Petitioner's third spinal surgery.

As explained above, the ALJ ignored Dr. Floyd's August 13, 2015 reevaluation of Petitioner's cervical spine condition and limitations. As discussed more fully below, the ALJ did not address the September 2015 addendum to Dr. William's evaluation which was consistent with Dr. Floyd's reevaluation and assessment. Further, Mr. Barnes' treatment notes reflect that Petitioner continued to complain of pain in her neck, left shoulder, and left arm following her third surgery. (AR 562-563.)

The ALJ appears to instead rely on an April 7, 2016 CT scan of Petitioner's cervical spine showing alignment was within normal limits and no central spinal canal or foraminal compromise. (AR 598-599.) The ALJ concluded that the April 2016 CT scan suggested Petitioner "does not have significant compromise of the spine that would be so severe that it would prevent her from engaging in work activity." (AR 23, 598.) The ALJ's conclusion, however, appears to be an improper medical opinion. *See Miller v. Astrue*, 695 F.Supp.2d 1042, 1048 (C.D. Cal. 2010) (reasoning that it is improper for the ALJ to act as the medical expert); *Padilla v. Astrue*, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) (opining that an ALJ is not qualified to extrapolate functional limitations from raw medical data).

There is no medical opinion in the record that supports the ALJ's independent assessment of the April 2016 CT scan. Just the opposite, Mr. Barnes' December 2016

assessment indicates Petitioner had continuing symptoms of her neck impairment that limited her functioning. (AR 604.) Again, there may be valid reasons for the ALJ's disability determination and decision rejecting Mr. Barnes' findings. The general conclusory statements provided in the current decision, however, fail to sufficiently articulate those reasons.

The Court appreciates that the materials in the Administrative Record may be somewhat limited. The ALJ, however, had an affirmative duty to develop the record to the extent he found the record ambiguous. *See* 20 C.F.R. § 404.1512(e)(1); SSR 96–5p, 1996 WL 374183; *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983) ("In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."). The ALJ acknowledged this duty at the hearing by recognizing the importance of having the most recent medical records and noting the potential need for an order for an orthopedic consultative examination or requesting additional medical records. (AR 60-61, 68-69.) On remand, the ALJ should consider whether further development of the record is necessary.

Additionally, the ALJ was required to evaluate Mr. Barnes' opinion pursuant to the criteria set forth in 20 C.F.R. § 404.1527(c), which factors include the examining relationship; treatment relationship; length of treatment relationship; and frequency of examination. *Revels*, 874 F.3d at 665 (citing 20 C.F.R. § 404.1527(c)(1)–(2), (f)).[8] The

---

[8] Petitioner argues in her brief that Mr. Barnes has treated her "for years prior, during and after all of my surgeries." (Dkt. 32.)

ALJ's decision recognized Mr. Barnes as Petitioner's "treatment provider," but did not address any of the other § 1527 factors. (AR 24.) The Court finds the ALJ erred by failing to discuss the § 1527 factors in his evaluation of Mr. Barnes' opinion, despite the existence of materials in the record relevant to the § 1527 factors. (AR 57-60) (ALJ and Petitioner's counsel both recognized Mr. Barnes as Petitioner's primary care provider.); (AR 331-334) (Treatment notes from Mr. Barnes dated July 20, 2011 to November 20, 2011.); (AR 549-550, 562-593, 605) (Records from Mr. Barnes dated April 21, 2015 to December 15, 2015 and Mr. Barnes' physical RFC assessment dated December 5, 2016.)

For all of these reasons, the Court finds the ALJ erred by failing to address the probative evidence in the record and to provide legally sufficient germane reasons supported by substantial evidence for discrediting Mr. Barnes' opinion. The ALJ's conclusory and generalized comments regarding the records and Mr. Barnes' assessment fail to address the inconsistencies in the evidence or explain the reasons for the ALJ's decision. *Lee*, 80 F.Supp.3d at 1148.

Because conflicts in the record are unresolved, the Court makes no finding concerning Petitioner's disability. That is for the ALJ to determine by assessing the record as a whole and providing a sufficient discussion of the records and reasons for the disability determination. *Reddick*, 157 F.3d at 725.

### D.    Dr. Williams' Evaluation

The ALJ gave some weight to the opinion of the non-treating, examining physician, Mark Williams, who evaluated Petitioner on April 14, 2015. (AR 22, 24, 557-561.) The ALJ concluded Dr. Williams' April 14, 2015 evaluation was consistent with

his RFC assessment that Petitioner retained the ability to perform jobs at a sedentary level with exertional limitation. (AR 24.)

There is no indication, however, that the ALJ considered the addendum to Dr. Williams' evaluation dated September 8, 2015, which is consistent with Dr. Floyd's September 1, 2015 opinion finding Petitioner required a third neck surgery. (AR 561.) Dr. Williams' addendum notes the findings of the July 14, 2015 MRI revealing significant interval change in Petitioner's cervical spine at C5-C6. (AR 561.) Importantly, Dr. Williams reports that Petitioner "complained of pain for many months leading up to her MRI in July 2015" and that the "significant increase in pain" experienced by Petitioner was related to and consistent with the nonunion and pseudarthrosis that had formed which Petitioner could feel before the x-rays and other radiography was able to identify. (AR 561.) The ALJ's decision makes no mention of Dr. Williams' addendum.

The Court finds the ALJ erred by relying on Dr. Williams' April 2015 assessment while failing to discuss the pertinent September 2015 addendum. While the ALJ need not discuss every piece of evidence presented, the ALJ cannot simply ignore probative evidence. *Lee*, 80 F.Supp.3d at 1148 (The ALJ must explain why significant probative evidence has been rejected.).

Dr. Williams' addendum is significant probative evidence that Petitioner continued to experience neck pain leading up to her third surgery, and is consistent with Dr. Floyd's August and September 2015 records. It was, therefore, error for the ALJ to not discuss the addendum and explain why the evidence was rejected; particularly where the ALJ had relied on the portion of Dr. Williams' opinion from April 2015 to support his

RFC assessment of Petitioner's functional limitations.

### E.       Harmless Error

Where, as here, the ALJ erred by failing to consider relevant records and the reasons for rejecting the medical opinion evidence are insufficient, the Court must determine whether the error was harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015); *Carmickle*, 533 F.3d at 1162-63. An error in the ALJ's analysis is harmless if it was "inconsequential to the ultimate decision" because the ALJ's disability determination nonetheless remains valid,  *Molina*, 674 F.3d at 1115 (citation and internal quotation marks omitted), or if despite the legal error, "the agency's path may reasonably be discerned," *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted). Where the ALJ fails to provide any analysis, the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. *Carmickle*, 533 F.3d at 1162-63 (discussing *Stout v. Comm'r Soc. Sec. Admin.*, 545 F.3d 1050, 1055-56 (9th Cir. 2006)).

Here, the ALJ failed to discuss probative records and made only general findings and conclusory statements for why he discredited the opinions of Dr. Floyd and Mr. Barnes. The ALJ's errors were not inconsequential to the ultimate decision and, therefore, not harmless.

Dr. Floyd and Dr. Williams both concluded Petitioner's neck condition had deteriorated in August and September 2015, which necessitated the third cervical surgery. Immediately prior to her third surgery, Dr. Floyd found that Petitioner's neck condition would require her to miss 15% or more of regular work attendance. (AR 539.) Mr.

**MEMORANDUM DECISION AND ORDER -** 18

Barnes' assessment one year after Petitioner's third neck surgery again concluded Petitioner's neck impairment would require her to be off task 15% or more during the day and would result in two or more sick days per month. (AR 605.) At the hearing, the vocational expert testified that there were no jobs Petitioner could perform if she was off task due to the need for additional rest breaks more than 5% of the normal work day or was absent two days a month. (AR 66-68.) Given that testimony, had the ALJ evaluated all of the records and determined greater weight should be given to the medical assessments of Dr. Floyd and Mr. Barnes, the ultimate disability determination would have been different.

Further, the Court cannot discern the agency's path from the ALJ's decision. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). Here, the ALJ's conclusory discussion of the record and opinion evidence makes it impossible to discern the agency's path and the Court may not speculate as to the ALJ's reasoning.

Remand, therefore, is appropriate to allow the ALJ to address the entire record, resolve any inconsistencies and ambiguities, assess the weight to be given to the medical opinions, and and explain the disability determination. *Marsh*, 792 F.3d at 1173 (citing 20 C.F.R. § 404.1527(d)(1)-(3)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").

**MEMORANDUM DECISION AND ORDER -** 19

2.     **Petitioner's Symptom Testimony**

Petitioner appears to generally contest the ALJ's consideration of her symptom

testimony. (Dkt. 32.) Respondent maintains the ALJ reasonably weighed Petitioner's

allegations and properly discredited her symptom testimony based on the treatment

records. (Dkt. 34.)

The ALJ engages in a two-step process for evaluating a claimant's testimony

about the severity and limiting effect of the claimant's symptoms. *Trevizo*, 871 F.3d at

678. First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the

pain or other symptoms alleged. *Id.* (quoting *Garrison*, 759 F.3d at 1014-15; 20 C.F.R. §

404.1529 (Mar. 27, 2017)).

If the claimant satisfies the first step of this analysis, and there is no evidence of

malingering, the ALJ may discredit the claimant's testimony about the severity of his or

her symptoms only by offering specific, clear and convincing reasons for doing so.

*Trevizo*, 871 F.3d at 678; *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not

sufficient for the ALJ to make only general findings; he [or she] must state which pain

testimony is not credible and what evidence suggests the complaints are not credible."

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The standard is whether there is substantial evidence to support the ALJ's

conclusion. *Trevizo*, 871 F.3d at 674. The ALJ's decision may be upheld even if not all of

the ALJ's reasons for discrediting the claimant's testimony are upheld. *See Batson v.

Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not,

however, make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

When evaluating a petitioner's subjective symptom testimony, the ALJ must consider all of the evidence in the record, "including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *See* SSR 16-3p (March 16, 2016), 2016 WL 1119029.

Here, the ALJ found that Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of these symptoms was not supported to the extent they were inconsistent with the RFC assessment. (AR 24.) The ALJ concluded that the treatment notes, examination findings, and objective diagnostic testing results did not support the degree of limitation alleged in Petitioner's symptom testimony. (AR 24.)

The ALJ's finding and Respondent's briefing rely in large part on the records relating to Petitioner's first and second neck surgeries. (AR 17-24); (Dkt. 34 at 2-3.) For the reasons discussed above, the Court finds remand is necessary to allow the ALJ to

**MEMORANDUM DECISION AND ORDER -** 21

properly consider the entire record; in particular, the records pertaining to Petitioner's third surgery. After considering the full record, the ALJ should reevaluate the Petitioner's symptom statements. It may be that the ALJ accurately assessed Petitioner's symptom testimony. But that is for the ALJ to determine on remand when the full record is before the ALJ. *Edlund*, 253 F. 3d at 1156 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.").

**3.      Remand**

The decision whether to remand for further proceedings or to order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").

Where, as here, the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. *Revels*, 874 F.3d at 668; *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. Here, outstanding issues must be resolved before a determination of disability can be made and, moreover, "the record as a whole creates serious doubt as to whether the [Petitioner] is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Remand for further administrative proceedings would therefore serve a useful purpose and remedy defects.

Likewise, remand for further proceedings is appropriate where the record is uncertain and ambiguous. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Here, the record is not fully developed. The appropriate remedy is to remand for further administrative proceedings to allow the ALJ to make the necessary credibility determinations, resolve ambiguities in the record, and decide whether to more fully develop the record.

The ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ may develop the record by ordering a consultative examination, but the Commissioner has "broad latitude" in deciding whether to do so. *Reed v. Massanari*, 270 F.3d 838, 841-42 (9th Cir. 2001). Because the Court is remanding this case for the ALJ to reevaluate the weight to give to the medical opinions, the Court declines to order the ALJ to develop the record in any particular manner. The ALJ should, as in every case, consider whether the opinion of a medical expert or consultative examiner would be necessary and appropriate on remand.

For all of the reasons stated herein, the Court will reverse the ALJ's decision and remand the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate the medical opinion evidence and Petitioner's symptom testimony. The ALJ should further develop the record, reevaluate the evidence, and reconsider the five-step disability evaluation as the ALJ deems necessary and appropriate.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Petitioner's Petition for Review (Dkt. 2, 24) is **GRANTED**.

2)     This action shall be **REMANDED** to the Commissioner for further

      proceedings consistent with this opinion.

3)     This Remand shall be considered a "sentence four remand," consistent with

      42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir.

      2002).

DATED: November 25, 2020

Honorable Candy W. Dale
United States Magistrate Judge